047272/21061/JNR/JCS

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

JIMMIE DALE MILLER,

Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., DIRECTOR CENTRAL MANAGEMENT SERVICES, LAURA PITTMAN, DINA PAUL, LORIE CUNNINGHAM, MR. WELLS, JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, JANE DOE #5, NURSE DEWEESE, NURSE FUSON, NURSE WARD, NURSE YANCY, NURSE SWINSON, NURSE FOSTER, C/O WILSON, ROB JEFFRIES, STEVE MEEKS, DR. JULIANA CHAN, AND UNIVERSITY OF ILLINOIS CHICAGO,

Defendants.

Case Number: 20-cv-446

Nancy J. Rosenstengel

## MOTION FOR SANCTIONS

NOW COMES the Defendants, DR. DINA PAUL, DR. LYNN PITTMAN, and WEXFORD HEALTH SOURCES, INC., by and through their attorney, Joy C. Syrcle of CASSIDAY SCHADE LLP, Defendant JULIANA CHAN, by and through her attorney, Keith B. Hill of HEYL, ROYSTER, VOELKER, & ALLEN, P.C., and Defendants THOMAS WELSH, ROB JEFFRIES, LOUIS SHICKER, STEVE MEEKS AND MICHAEL DEMPSEY, by and through their attorney, KWAME RAOUL, Attorney General for the State of Illinois, and for their Motion for Sanctions, state as follows:

## Introduction

Within minutes of raising his hand in his deposition and swearing under penalty of perjury to tell the whole truth, and nothing but the truth, Plaintiff willfully perjured himself. It was not a lie of omission. It was not a lie of exaggeration. It was not a little white lie. Instead, Plaintiff affirmatively concocted a fictitious story about his medical treatment complete with details manufactured to deceive the opposing parties. While Plaintiff later admitted his lies, this is cold comfort to a system that relies on litigants who avail themselves of its processes to respect the oath and tell the truth in the first instance. By coming clean on his lies, Plaintiff may have a mitigated a criminal referral for perjury, but his behavior cannot go unpunished. It is too egregious. Parties cannot willfully lie under oath and then simply wipe the slate clean. To allow this, demeans the process. Plaintiff's case must be dismissed with prejudice both to punish Plaintiff and to send a message to other litigants that lying under oath will not be tolerated.

## Background

Plaintiff filed his pro se Complaint in this case on May 14, 2020, at which time Plaintiff was an inmate in Lawrence Correctional Center. [Doc. 1, p. 3]. Since filing of the initial Complaint, Plaintiff has been released from incarceration and appointed an attorney. Plaintiff's appointed counsel filed an Amended Complaint on May 18, 2021. [Doc. 108]. In the Amended Complaint, Plaintiff asserts the following claims:

Count I – Deliberate indifference related to Hepatitis C and Type 2 diabetes;

Count II – Deliberate indifference for failure to treat Plaintiff's dental injury; and

Count III – Deliberate indifference for denial of prescribed medications on release;

The Parties are engaging in discovery as to Plaintiff's Amended Complaint and Defendants took Plaintiff's deposition on February 28, 2022. (Transcript attached hereto as

Exhibit A). Plaintiff is no stranger to litigation or the discovery process. In fact, Plaintiff currently has two other suits pending related to his medical treatment while in IDOC. (Ex. A, p. 31-32; *Miller v. Rauner,* 1:17-cv-5609 (ND IL)*; Miller v. Wexford,* 20-3533 (7th Cir.)).

During his deposition, Plaintiff was sworn-in by the court reporter and later affirmatively acknowledged he was aware that his "testimony . . . . is under oath and will have the same effect as if [he was] testifying in a court of law." (Ex. A, 6:14-18). Despite such acknowledgment, Plaintiff proceeded to give admittedly false testimony. When Plaintiff was asked what medication he was taking as of the date of the deposition, Plaintiff testified: "Metformin, I'm taking my Risperdal, and there's other medications that I'm taking, I just don't know the name if it, I haven't written it down." (Ex. A, p. 14:4-12). In clarifying what the other medications are for, Plaintiff testified "one is for anxiety, the other one if for high blood pressure, and the other one is I believe also for diabetes." (Ex. A, p. 14:13-16).

During questioning about the dental condition at issue in Count II of the Amended Complaint, Plaintiff gave the following testimony:

Q. Have you seen a dentist for that tooth since your release in 2020?

**A. Yes, I have.**

Q. And has that issue been resolved?

**A. Yes, it has.**

Q. What did that dentist do with that tooth?

**A. Pulled it.**

Q. How long ago was that?

**A. I don't remember, shortly after I got out, I don't remember.**

Q. Was it within a year of your release?

**A. Well, I got my medical -- I couldn't see nobody until after August 1st, so I don't know after that when, but I couldn't see anyone because of COVID. It**

**was months after my release. I don't remember exactly when. It wasn't a year.**

**A. It was within a year.**

Q. It was within a year?

**A. Yes.**

Q. So if the allegations of your complaint say that that issue has not been addressed, that would not be correct?

**MR. SULLIVAN:** Object to form.

Q. I apologize. So your amended complaint was filed May 18th of 2021. If the allegations in May of 2021 say that the issue with your remaining tooth had not been addressed, that would not be correct, is that your testimony?

**A. I don't know exactly when I actually went to the dentist, but it was after August, so I'm not saying shortly after August, it was months later.**

Q. After August of 2020, correct?

**A. Exactly.**

Q. Who was the dentist that pulled that tooth?

**A. I don't remember who the dentist was.**

Q. Where was the dentist office?

**A. It was in -- somewhere in Melrose Park.**

Q. How did you identify that dentist to go there?

**A. My insurance gave me a reference to them.**

(Ex. A, 94:10-96:1).

As Plaintiff's medical condition and treatment are at issue in the case, the undersigned counsel asked Plaintiff to identify his current treating physicians. Plaintiff testified he had a number of primary care physicians since June 2020. (Ex. A, 103:1-5). When asked for the name of the physician who had most recently treated him for diabetes and prescribed his current medication, Plaintiff gave the following testimony:

Q. At the beginning, you testified that you are prescribed, you're currently prescribed metformin and insulin. Do you know who wrote those prescriptions?

**A. Yes, one of the primary care physicians, yes.**

Q. What is his or her name?

**A. I don't know her name. I don't have the documentation with me.**

Q. What facility did you see her at?

**A. The facility is located on Madison.**

Q. Do you know the name of the facility?

**A. That's what I'm trying to figure out because it's the same facility that I'm speaking about when I was -- when I was staying on Houston and then I went to the west side. So it's the same facility but in different locations, so --**

Q. So they're affiliated but different buildings, is that what you mean?

**A. Exactly, yes.**

Q. What -- what pharmacy did you use to get this prescription filled?
**A. Walgreens.**

Q. Which Walgreens?

**A. I just told you I don't know the address in the area. There's so many -- you're asking me a question about something so long ago, I can't give you a direct street or address. I could just tell you Walgreens.**

Q. I'm not --

**MR. SULLIVAN:** If you don't know the answer to her question, you can tell her you don't know.

**A. Yeah, I don't know, I don't know.**

Q. And maybe we misunderstood because I'm not talking about a long time ago. I'm talking about your current prescription that you have at home that you're taking right now, where do you get that filled?

**A. The Walgreens where I last got my medication was located -- let me take a break please, let me just check.**

**MR. SULLIVAN:** Sure.

**A. Oh, let me answer the question.**

**MR. SULLIVAN:** Yeah, answer the question.

**A. 860 North Dewitt Place, there was a Walgreens in that area. That's where I used to get all my medication**

(Ex. A, 105:4-107:1).

Plaintiff then asked for a break, after which Plaintiff's counsel stated on the record that Plaintiff needed to correct some of his prior testimony. Plaintiff then stated:

**THE WITNESS:** Regarding me getting my tooth pulled, I never got it pulled. I didn't want to pull my tooth. And even to this day, if you can actually see me [indicating], it's still loose. I even tried to pull it out myself and it hurt, but I wanted to save my tooth. And as for my medication, my insulin, my metformin, the only pills, medication that I have been taking was my anxiety medication and that ran out. My Risperdal, I don't like to take that because it puts me in a stupor, you know, it just have me kind of like, excuse the French, fucked up. I don't like to feel that way. And as regards to my insulin and metformin, I haven't had any of my medication really for about maybe going on a year, you know.

(Ex. A, 107:16- 108:6).

**BY MS. SYRCLE:**

Q. So we'll start with the dentist. When I asked you about the status of that tooth and you said you went to a dentist in Melrose Park and he pulled the tooth, what would make you say you had a tooth pulled when that tooth is apparently still in your mouth?

**A. Because, I don't know, I guess the way you was kind of questioning me and I kind of got frustrated and I didn't want you to think that, you know, after all this time, which I know you probably are thinking that what did you do with that tooth when you complained that it was giving you so much problem, and I didn't want to admit the fact that even when I got out I did not take care of that.**

Q. So you gave false testimony because you didn't want to admit something that you thought might be detrimental to your case?

**MR. SULLIVAN:** Object to form.

**A. No. No, I -- I lied because I didn't want to admit the fact that I did not take care of it not that it was detrimental to my case.**

Q. So you've still got the tooth and you just testified that you made the choice that you wanted to save your tooth. Did the dentist actually do any treatment or did you not see a dentist at all?

**A. Not at all.**

(Ex. A, 108:22-109:22).

Q. With respect to your medications, at the beginning of your testimony you listed for me a number of medications that you were prescribed and told me the timing at which you were prescribed them, and that with respect to at least one, if not two, you testified that you had taken it last night. That testimony is incorrect?

**A. That is incorrect.**

Q. So why when I asked you at the beginning of this deposition what medications you were taking did you tell me you were taking insulin and metformin?

**A. Just as I wanted you to believe that I took care of my tooth, I wanted you to believe that also took care of my medication as well by taking my medication.**

Q. So when is the last time you've seen any doctor related to treatment of your diabetes?

**A. It's been -- it's been a while ago. It's been over maybe seven months, over probably.**

(Ex. A, 111:6-25).

Rule 37(d)-(d) of the Federal Rules of Civil Procedure provide this Court may order sanctions, including dismissal of a Plaintiff's complaint, for abuses of discovery, including failing to obey a discovery order, failing to answer written discovery or appear for a deposition after being served with proper notice. (Fed. R. Civ. Pro. 37). The Seventh Circuit has construed the sanctioning power conveyed by Rule 37 to extend to instances of a party lying in his deposition. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775-77 (7th Cir. 2016)

(holding dismissal is an appropriate sanction for party soliciting a witness to lie in a court-ordered deposition).

Rule 37(d) states that sanctions may include those listed in Rule 37(b), including prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing the designated matters in evidence, striking pleadings in whole or in part, staying further proceedings until an order is obeyed, dismissing the action, or proceeding in whole or in part, rendering a default judgment against the disobedient party, or treating as a contempt of court the failure to obey any court order except an order to submit to a physical or mental examination. [Fed. R. Civ. Pro. 37(d)(2)(a)(i-vii)]. Rule 37(b)(3) also states that instead of, or in addition to, the sanctions listed in Rule 37(b), the court must require the party failing to act, the attorney advising that party, or both, to pay reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expense unjust. [Fed. R. Civ. Pro. 37(b)(3)]

In addition, "apart from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct". *Id. citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50, 111 S. Ct. 2123, 2134-36, 115 L. Ed. 2d 27 (1991).

Here, this Court's Scheduling Order, expressly provided:

> Defendants are given leave to depose Plaintiff pursuant to Federal Rule of Civil Procedure 30(a)(2). Defendants shall serve any Rule 30 notice upon Plaintiff at least 2 weeks prior to the date of a deposition. Plaintiff is informed that he must cooperate in the taking of his deposition. It is appropriate and proper for defense counsel to take a Plaintiff's deposition and to ask questions even if Plaintiff is not represented by counsel. The failure to cooperate in the taking of a deposition by, for example, refusing to answer appropriate questions, may result in sanctions, including the dismissal of this lawsuit. See Federal Rule of Civil Procedure 30

[Doc. 154, Sec. I(D)].

Plaintiff did not refuse to appear or refuse to answer questions – instead he intentionally gave false answers. By his own admission, Plaintiff perjured himself during his deposition as to at least two areas of questioning: his dental treatment and current medications. Both of these topics are directly relevant to Plaintiff's claims in this case. This type of blatant fabrication should not be tolerated by the Court. *See Ayoubi v. Dart*, 640 Fed. Appx. 524, 528-29 (7th Cir. 2016) (affirming finding of fraud and dismissal with prejudice as an appropriate sanction for fraud committed on the Court); *Rivera v. Drake*, 767 F.3d 685, 686-87 (7th Cir. 2014) (affirming sanction of dismissing with prejudice prisoner's suit when inmate perjured himself to circumvent an exhaustion defense); *Jackson v. Murphy*, 468 Fed. Appx. 616, 620 (7th Cir. 2012), *see also*, *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) ("Beyond any rule-based justification, the court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations.").

As the Seventh Circuit has noted, "falsifying evidence to secure a court victory undermines the most basic foundations of our judicial system. If successful, the effort produces an unjust result. Even if it is not successful, the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). In those instances, courts "have an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct." *Id.*

The Seventh Circuit has also held that "a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary." *Ayoubi v. Dart*, 640 Fed. Appx. 524, 528-29 (7th Cir. 2016)

(citing *Mathis v. N. Y. Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998)). Further, sanctions for deceiving the Court are necessary "not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court." *Dotson*, 321 F.3d at 668 (upholding sanction of dismissal with prejudice for a party's deceptive actions, to include concealing his identity).

Plaintiff lied within minutes of acknowledging that he was under oath and the effect of that oath. In doing so, Plaintiff completely fabricated facts, from medications he claimed to be taking to purportedly having a tooth pulled when he had sought no care for the tooth. Plaintiff even provided a neighborhood where the fictious dental office was located. Plaintiff was not taking medications and had seen no dentist. In Plaintiff's own words, "I lied because I did not want to admit the fact that I did not take care of it." (Ex. A, p. 109). Plaintiff fabricated facts in a way specifically designed to skew the outcome of his case, as dental treatment and provision of his medication are directly at issue in the Amended Complaint. While Plaintiff later admitted these lies, his behavior demonstrates a complete disrespect for the Court and the judicial process and should not be tolerated.

## **Conclusion**

This Court should impose sanctions both to punish Plaintiff for his perjury and to deter Plaintiff and others from similar conduct in the future. Specifically, the Court should dismiss all or part Plaintiff's Amended Complaint and grant Defendants costs and fees incurred in Plaintiff's deposition and the present Motion.

WHEREFORE Defendants respectfully request this Court enter an Order dismissing Plaintiff's claims as a sanction for his perjury, awarding Defendants costs and fees incurred in

Plaintiff's deposition and in relation to the present Motion and granting other such further relief deemed appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joy C. Syrcle
One of the Attorneys for Defendant, DR. DINA PAUL, DR. LYNN PITTMAN, and WEXFORD HEALTH SOURCES, INC.

HEYL, ROYSTER, VOELKER & ALLEN, P.C.

By: /s/ Keith B. Hill
Attorneys for Defendant JULIANA CHAN

KWAME RAOUL, Attorney General, State of Illinois

By: /s/ Tara M. Barnett
Assistant Attorney General for Defendants THOMAS WELSH, ROB JEFFRIES, LOUIS SHICKER, STEVE MEEKS, AND MICHAEL DEMPSEY

Joy C. Syrcle
ARDC No. 6302066
CASSIDAY SCHADE LLP
3100 Montvale Drive
Springfield, IL 62704
(217) 572-1714
(217) 572-1613 (Fax)
jsyrcle@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2022, I electronically filed the foregoing Motion for Sanctions with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Keith B. Hill, Esq.
Heyl, Royster, Voelker & Allen, PC
105 West Vandalia, Suite 100
P.O. Box 467
Edwardsville, IL 62025
(618) 656-4646
(618) 656-7940 (Fax)
khill@heylroyster.com

Tara M. Barnett
Assistant Attorney General
201 West Pointe Dr. Suite 7
Belleville, IL 62226
tara.barnett@ilag.gov

Sean M. Sullivan
Ah Hil Kim
Daley Mohan & Groble
55 W Monroe Suite 1600
Chicago IL 60603
(312) 422-5536
ssullivan@daleymohan.com

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein are true and correct.

/s/ Joy C. Syrcle

11003430