IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMIE DALE MILLER, | |
| Plaintiff, | |
| v. | Case No. 20-cv-446-NJR |
| WEXFORD HEALTH SOURCES, INC., LAURA PITTMAN, DINA PAUL, LORIE CUNNINGHAM, STACI DEWEESE, ROB JEFFREYS, JULIANA CHAN, LOUIS SHICKER, STEVE MEEKS, MICHAEL DEMPSEY, and THOMAS WELSH, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Jimmie Dale Miller, a former inmate of the Illinois Department of Corrections ("IDOC"), brought this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He alleges Eighth Amendment deliberate indifference claims regarding the treatment of his Hepatitis C and Type 2 Diabetes, as well as treatment for a dental injury, and the failure to provide him with proper medications upon his release.

This matter is before the Court on a motion for sanctions filed by all Defendants (Docs. 167, 168). Defendants ask for the dismissal of Miller's case for committing perjury during his deposition. Miller filed a response in opposition to the motion (Doc. 172).

BACKGROUND

On May 14, 2020, Miller filed his Complaint alleging Defendants were deliberately indifferent in treating his Hepatitis C ("hep C") and diabetes (Docs. 1 and 13). He was later allowed to amend his Complaint to add claims related to a dental injury and the failure to provide him with medications upon his release (Docs. 104, 107, 108). He was allowed to proceed on the following claims:

Count 1:    Eighth Amendment deliberate indifference claim against Wexford, Paul, Pittman, Chan, Meeks, Dempsey, Shicker, and Cunningham for treatment of his hep C and Type 2 Diabetes.

Count 2:    Eighth Amendment deliberate indifference claim against Pittman and Cunningham for failing to treat his dental injury.

Count 3:    Eighth Amendment deliberate indifference claim against Pittman, Cunningham, and Welsh for failing to provide Miller with a reasonable supply of his prescriptions upon his release.

(Docs. 107, 108).

On February 28, 2022, Miller participated in a deposition with counsel for all Defendants regarding his three claims. At the beginning of his deposition, he was reminded that he was under oath and that being under oath at the deposition would have the same effect as if he was testifying in court (Doc. 168, p. 6). Miller acknowledged that he understood he was under oath (*Id*.). He then testified as to a number of issues related to his claims.

As part of general questioning of Miller's background, he was asked if he was currently on any medications (Doc. 168, p. 14). He testified that he was taking Metformin and Risperdal, as well as a medication for anxiety but he did not know the name of the

other medication (*Id*.). He testified that he had not taken any medications the morning of the deposition except vitamins (*Id*. at pp. 14-15). He stated that he took his Risperdal the night before the deposition (*Id*. at p. 15).

During questioning regarding the injury to his tooth, he testified that he was in an altercation in March 2020 that resulted in two dangling teeth (*Id*. at p. 91). Although he pulled the first tooth himself while still in prison, the dentist told him he could receive care for his tooth upon his release and recommended not pulling the tooth (*Id*. at pp. 91, 93). Miller testified that, since his release, he had seen a dentist about the tooth and that the issue was resolved (*Id*. at p. 94). Specifically, he testified that a dentist pulled his tooth but he could not remember when the extraction occurred or the name of the dentist (*Id*. at pp. 94-95). He only recalled that it was after he received insurance on August 1, 2020, many months after, and that the dentist was located somewhere in Melrose Park (*Id*.). He testified that his insurance gave him a reference to the dentist (*Id*. at p. 96).

He also was questioned about his current treating physicians and the care for his diabetes. He testified that after his release, he was treated in the emergency room for an illness, and after he received insurance on August 1, 2020, he saw a doctor for his diabetes (*Id*. at pp. 45, 102). He testified that "I don't remember the place…and I don't remember actually when they actually started treating me for the diabetes and the hep C as well." (*Id*. at p. 102). He then stated he was first seen by a doctor in Lawndale after he received his insurance card, but he went through a number of primary physicians and could not remember their names (*Id*. at pp. 102-103). He stated that he saw Ramalingappa Nagaraju for his diabetes at some point during Covid, but he only saw Dr. Nagaraju for his diabetes

and not his hep C (*Id*. at pp. 103-104). When questioned about his current prescriptions for Metformin and insulin, he testified one of his primary care physicians wrote the prescription but he did not know "her name" (*Id*. at p. 105). He only recalled that the facility was located on Madison but he did not know the name of the facility.

He testified that he filled his current diabetes prescriptions at Walgreens (*Id*. at pp. 105-106). He could not recall which Walgreens, testifying that the attorney was "asking [him] questions about something so long ago" (*Id*. at p. 106). When counsel clarified he was asking about his current prescriptions, he asked to take a break before answering (*Id*. at p. 106). He then answered that the Walgreens was located at 860 North Dewitt Place (*Id*.).

At that point in the testimony about his treatment of diabetes, having asked to take a break from questioning, the parties took a five-minute break. Upon returning on the record, Miller's counsel indicated that he wanted to correct some statements about his dental injury and medications (*Id*. at p. 107). At that point, Miller testified that his previous testimony was entirely fabricated. He never had his tooth pulled because he did not want it pulled (*Id*. at p. 107). He pointed the tooth out to counsel, indicating that it was still loose. As to his medication, he testified that the only medication that he continued to take was his anxiety medication, and he had run out of that medication (*Id*.). He testified that he did not take his Risperdal because it left him in a stupor, nor had he taken his insulin or Metformin in about a year (*Id*. at p. 108).

When questioned again about his tooth, he testified that he lied because he was frustrated, and he didn't want opposing counsel to think that he did not take care of the

Page 4 of 12

issue after complaining about the tooth (*Id*. at p. 109). He acknowledged that he lied but denied that it was because he worried that the true testimony would be detrimental to his case (*Id*.). He admitted he had not even seen a dentist after his release (*Id*.).

When questioned further about his medications, he admitted that he lied when he testified that he took medication the night prior to the deposition (*Id*. at p. 111). He testified that he lied because he wanted counsel to believe that he took care of his medications (*Id*.). But he admitted that he had not received medication for his diabetes in at least seven months (*Id*.). As to the doctor he identified as one of his primary doctors, he testified that he did not see him about his diabetes and only saw him shortly after receiving his insurance card (*Id*. at pp. 111-112). Since seeing that doctor, he had seen three or four different primary care doctors but could not recall their names or when he saw them (*Id*. at p. 112). He did not know his current A1C levels and had not had them tested for more than seven months prior to the deposition (*Id*. at p. 113).

As to his hep C, Miller maintained that his treatment was complete (*Id*. at p. 113). According to his testimony he went to Access Family Health Services in Chicago for treatment but did not recall the date he began treatment or when it was completed (*Id*. at pp. 113-14). He could only recall that it was completed over seven months prior to the deposition (*Id*. at p. 114).

In his deposition, Miller admitted that he lied about treatment that he received for his tooth and diabetes. He also admitted to lying about the medications he received since his release. In his responsive brief, he acknowledged that Defendants' recitation of the facts regarding his testimony at the deposition was accurate. He also admitted that he

provided untruthful answers to two lines of questioning, regarding his medications and the repair of his injured tooth (Doc. 172, p. 1). He maintained, however, that none of the fraudulent testimony went directly to Defendants' conduct or his actual claims against them. He also maintained that he only lied under oath due to embarrassment and not to gain any litigation advantage. He further argued that he self-corrected the misstatements in the deposition.

LEGAL STANDARDS

Federal Rule of Civil Procedure 37(d) provides that the Court may order sanctions for discovery abuses, to include failing to appear for a deposition or failing to respond to discovery requests. Fed. R. Civ. P. 37(d)(1). The Seventh Circuit has construed the Court's sanctioning powers "to instances of a party hiding evidence and lying in his deposition." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citing *Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 723–24 (7th Cir. 2008)). Sanctions for Rule 37 violations may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Dismissal through the Court's inherent authority to regulate the conduct of parties

also "can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Ramirez*, 547 F.3d at 723-24 (quoting *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015)). "[P]erjury is among the worst kinds of misconduct." *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014). The Seventh Circuit has upheld the dismissal of lawsuit where the plaintiff lied at the deposition on a number of topics. *Negrete*, 547 F.3d at 723–24 (The plaintiff lied about his income and a number of other topics. Although plaintiff argued that his lies were inadvertent and contradicted by his own document production, the Seventh Circuit upheld the dismissal pursuant to Rule 37(b)(2)(A), finding that the repeated misconduct demonstrated that the plaintiff acted in bad faith.). But dismissal for perjury may also be excessive if the perjury was clumsily committed, discovered quickly, or harmless to the course of the litigation. *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003).

## ANALYSIS

Simply put, Miller lied at his deposition. He fabricated care that he did not receive for conditions directly at issue in this case. He lied about receiving care for his diabetes. He lied about having his tooth pulled. He lied about the current prescriptions he takes for his conditions, including lying about taking a medication the night before the deposition. Miller does not deny that he fabricated his testimony. He did, eventually, stop the deposition, spoke with his attorney, and then admitted to his deception on the record. This occurred, however, over an hour after the deposition began (Doc. 168, p. 59).

Miller does not deny that he was wrong in presenting false testimony. Instead, he argues that he was not attempting to hide evidence that might be detrimental to his case

but was embarrassed by being perceived as lacking good hygiene and healthcare practices. But Miller never testified that he was embarrassed. Rather he testified that:

> I kind of got frustrated and I didn't want you to think that, you know, after all this time, which I know you probably are thinking that what did you do with that tooth when you complained that it was giving you so much problem, and I didn't want to admit the fact that even when I got out I did not take care of that.

(Doc. 168, p. 109).

As to his current medications, he testified:

> Just as I wanted you to believe that I took care of my tooth, I wanted you to believe that [I] also took care of my medication as well…

(*Id*. at p. 111).

Although Miller argues that this testimony does not affect his allegations regarding his three claims, his testimony goes to the heart of his dental and medication claim.[1] His Amended Complaint alleged that Defendants refused to provide him dental treatment prior to his release, and he continued to suffer because he was "unable to secure treatment upon his release." (Doc. 108, p. 23). He testified at the deposition that the prison dentist would not "deal with" his tooth because he was close to being released and "[he]

---

[1] Miller maintains he never lied about his treatment for hep C (see Doc. 172, p. 6), but the Court finds troubling testimony in the record regarding his hep C. He initially testified that he could not remember the name or location of the doctor who treated his hep C (Doc. 168, pp. 101-102). He stated that he did not remember the place or "when they actually started treating me for the diabetes and the hep C as well" (*Id*. at p. 102). But after acknowledging his lies about his diabetes treatment, he testified that the location that treated his hep C was Access Family Health Services but he did not know the name of the physician or when he received treatment. He also did not know the treatment he received or the name of the medication, only that he thought it was a 16-week pill (*Id*. at p. 131). When asked if he had a FibroScan after being paroled he testified, "Yes, I think I did, yes." (*Id*.). His testimony about the treatment of his hep C was vague, as was his testimony about his treatment for diabetes, which he eventually admitted was false.

wasn't going to see no doctor no time soon" because of Covid shutdowns (Doc. 168, p. 110). Miller believed the dentist acted with deliberate indifference by telling him to wait until he was released. But Miller did not want his tooth pulled and, in fact, chose not to get it pulled upon his release. By testifying that he did have the tooth pulled, Miller potentially sought to bolster his claim that Defendants were deliberately indifferent in not treating his tooth before his release.

Similarly, his fabrications of doctor appointments, treatment for his diabetes, and medications sought to impact his claims against Defendants. He testified that Defendants were deliberately indifferent in not providing him with insulin, Metformin, and Naproxen (Doc. 168, p. 134). His Amended Complaint alleged that he should have received a reasonable supply of his medication and that he "suffered significant health impacts by virtue of being deprived of his prescription medications for a period of time after his release." (Doc. 108, pp. 24-25). But he ultimately admitted in his deposition that he had not taken insulin or Metformin since his release from prison. He believed that he did not need the medication due to his weight loss after his release (Doc. 168, p. 108). By lying in his testimony that he received care for his diabetes and was currently taking medications that he alleged should have been provided when he left, he attempted to prove that Defendants were indifferent to a risk of harm due to the delays he experienced in receiving care.

Nothing in the deposition record suggests that he was embarrassed or concerned about his hygiene. His testimony suggests that he sought to bolster his claims by fabricating a story that would support his claims of poor healthcare at the prison. Miller

argues that he admitted his fabrications and provided additional clarifying testimony during the middle of the deposition. That he could not keep up with the lies and came clean when defense counsel asked increasingly more specific questions about his care does not relieve him of his bad faith. The Court finds that he provided false testimony in an attempt to help his case against Defendants. His falsehoods also meet the definition of perjury. *Montano v. City of Chicago*, 535 F.3d 558, 565 (7th Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) ("perjury is defined as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'")).

Having found that Miller deliberately lied in his deposition, the Court must decide what type of punishment is warranted. Defendants seek dismissal of Miller's case, as well as costs and fees for the deposition and the filing of their motion. Miller argues that Defendants did not suffer any prejudice, nor did they endure any additional expense because they were able to continue with the deposition. Although he acknowledges he was wrong in lying on the record, he argues that Defendants' motion is an overreach and that the only additional expense was the unnecessary expense in deciding to file the motion for sanctions (Doc. 172, p. 4). He also tries to place ill will on Defendants, arguing that they are merely attempting to avoid litigating Miller's claims, that they have stonewalled discovery, and that they have caused time and expense for both parties in filing their motion (*Id*. at p. 6).

The Court finds Miller's arguments disingenuous. Miller's lies at his deposition are a very serious matter and the fact he tries to minimize his wrong is also troubling.

Miller sought to fabricate testimony that supported his claims under oath. Such actions cannot go unpunished. His only mitigating action was in stopping the deposition and correcting his testimony. Because the fabrications were discovered early and defense counsel was allowed an opportunity to re-examine his testimony at the deposition, the Court finds that dismissal is not warranted. *See Allen*, 317 F.3d at 703. Instead, the Court **ORDERS** Miller to pay both the reasonable cost and fees incurred for defense counsel in participating in the deposition and in filing the motion for sanctions. Although Miller argues that Defendants suffered no additional expense in the deposition because he corrected his statements, counsel conducted additional questioning and spent additional time at the deposition clarifying Miller's testimony. Thus, costs and fees associated with the deposition are warranted.

## CONCLUSION

For the reasons stated above, Defendants' motion for sanctions (Doc. 167) is **GRANTED in part**. Although the Court will not dismiss the case at this time, Miller is **ORDERED** to pay reasonable costs and attorneys' fees associated with defense counsels' participation in the deposition and in filing the motion for sanctions. Defendants shall have **14 days** from the date of this Order to provide a notice to both Miller and the Court of the requested fees. Miller shall then have **14 days** to file a response to the notice as to the reasonableness of the fees. Once the Court has ruled on the reasonableness of the fees, Miller shall have **30 days** from the date of the Court's Order to pay the costs and fees. Failure to pay the fees within the required timeframe will result in dismissal of Miller's case. The Court **STAYS** the case until the sanction is paid. Miller's motion to compel

(Doc. 166) is also **DENIED without prejudice** until Miller pays the sanction. Once the

sanction is paid and the stay lifted, Miller may re-file his discovery motion.

**IT IS SO ORDERED.**

**DATED:   July 27, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**