**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JIMMIE DALE MILLER,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCE, INC.; LOUIS SHICKER, former Medical Director of Illinois Department of Corrections, individually; STEVE MEEKS, Medical Director of Illinois Department of Corrections, individually; MICHAEL DEMPSEY, former Interim Medical Director of Illinois Department of Corrections, individually; DR. DINA PAUL, individually; DR. LAURA PITTMAN, individually; DR. JULIANA CHAN, individually; LORI CUNNINGHAM, individually; and CORRECTION OFFICER DOE, individually,<br><br>Defendants. | ) | No. 3:20-cv-00446-NJR |

**RE-FILED MOTION TO COMPEL DEFENDANTS TO SUPPLEMENT WRITTEN DISCOVERY ANSWERS**

Plaintiff, JIMMIE DALE MILLER, by his attorneys, Daley Mohan Groble, P.C., moves this Court to order Defendants to immediately supplement their answers to Mr. Miller's written discovery requests. In support, Mr. Miller states:

## INTRODUCTION

1. On May 18, 2021, Plaintiff filed his First Amended Complaint against the Defendants alleging their failure to treat him for multiple serous medical conditions, most notably Hepatitis C ("Hep C"), during his incarceration with the Illinois Department of Corrections ("IDOC") from 2016 through 2020.

2. Pursuant to this Court's scheduling order, Mr. Miller propounded Rule 33

Interrogatories and Rule 34 Requests to Produce to Defendants. A Copy of the Interrogatories and Requests are attached and incorporated in Defendant's answers, see Exhibits A, B, C and D.

3. The crux of this discovery aimed to unravel the chain of decisions that led to Mr. Miller being denied treatment for his Hep C based on the level of his average blood glucose, or blood sugar, level over the past 3 months (his "A1c").

4. Plaintiff maintains that there is no medical basis for the denial of Hep C treatment based on the patient's A1c.

5. In fact, as cited in the Amended Complaint, Defendant Dina Paul has admitted at a deposition in another case that Hep C antiviral drug therapy can be used on patients with "uncontrolled diabetes." Defendant Paul further admitted that American Association for the Study of Liver Diseases guidelines recommend that all patients with Hep C receive treatment and that where prioritization is necessary priority should be given to "patients who have more advanced disease than for patients that do not."

6. However, the decision to exclude inmate patients with elevated A1c purportedly comes from the Illinois Department of Corrections ("IDOC") Hep C Treatment guidelines (the "guidelines").

7. For example, only the 2019 and 2021 guidelines were produced by Defendants in discovery although all Defendants refer to the guidelines in their discovery responses and should have access to all iterations of the guidelines. While Defendants assert that only the guidelines in effect during Plaintiff's incarceration are relevant, earlier iterations and documents related to their creation are obviously relevant to the issue of whether those guidelines are based on legitimate medical considerations or are tools improperly designed and used to deprive inmates, including Plaintiff, of needed medical treatment.

8. The 2019 guidelines are purportedly based on the August 2018 Federal Bureau of Prisons ("FBOP") guidelines, however the FBOP guidelines do *not* include any exclusion criteria or contraindication based on the patient's Diabetes or A1c status. Instead, the FBOP guidelines establish Diabetes as an "intermediate *priority*" factor for Hep C treatment.

9. At this point in discovery, Plaintiff has not been provided with the genesis for these guidelines and what, if any, medical basis there is for their recommendations, which all Defendants are currently purporting to blindly follow.

10. Plaintiff is entitled to know who set the stage for the denial of his medical treatment based on faulty, indeed manufactured, medical principles.

**DISCOVERY RESPONSES**

11. Instead, each defendant has pointed the finger at the other in their evasive responses.

12. The IDOC defendants: Lori Cunningham, Thomas Welsh, Robert Jeffreys, Michael Dempsey, Steve Meeks and Louis Shicker (collectively "IDOC Defendants") all provided substantially similar answers to interrogatories and claimed that the guidelines are prepared in consultation with the *Lippert* monitors[1] and the University of Illinois Chicago ("UIC"). Not identifying any specific person. A copy of Lori Cunningham's Answers to Interrogatories are attached hereto as Exhibit A. In their answers to the amended complaint, they were even less forthcoming. For example, Defendant Meeks, Shicker and Dempsey (IDOC Chief Medical Officers) stated they "are not experts on Hepatitis C" and that the guidelines "are created primarily by UIC but with review and approval by IDOC." (Answer, ¶¶ 37, 42). Defendant Meeks further answered that "UIC prepared the treatment guidelines for Hepatitis C and that he relied on their

[1] *Lippert v. Ghosh*, No. 10-4603 (N.D. Ill.) included a consent decree that requires IDOC to implement changes in several areas, including chronic disease care, which covers Hep C.

expertise when he reviewed and approved same." (Answer, ¶ 44).

13. Further, in their Response to the Requests to Produce, the IDOC Defendants again fail to provide any of the documentation for the creation of the guidelines or updating the guidelines to be in-line with current best practices. A copy of Lori Cunningham, Rob Jeffries and Thomas Welsh's Responses are attached hereto as Exhibit B.

14. The Wexford defendants: Wexford, Dr. Dina Paul, Dr. Laura Pittman (collectively "Wexford Defendants"), on the other hand, point the finger at IDOC saying that IDOC created the guidelines, which supersede any Wexford guidelines. They do not provide any information regarding how their physicians may use their best judgment when in conflict with the IDOC guidelines, nor even how their physicians apprise themselves of the latest developments in best practice to evaluate the accuracy of any guidelines. A copy of Dr. Dina Paul, Dr. Laura Pittman and Wexford's Responses are attached hereto as Exhibit C.

15. This is after Dr. Paul has previously recognized the IDOC guidelines run afoul of good medical practice.

16. Finally, Dr. Chan, working for UIC, states that she is a pharmacist and not a medical doctor and initially declined to provide information regarding who at UIC has information regarding the guidelines. A copy of Dr. Chan's Responses are attached hereto as Exhibit D. A copy of Dr. Chan's Letter regarding her credentials attached hereto as Exhibit E.

**RULE 37 CONFERENCES AND CORRESPONDENCE**

17. On February 11, 2022, Plaintiff sent a Rule 37 Letter to all Defendants regarding the above concerns, especially in light of the on-going *Lippert* consent decree, that Defendants should have ample documentation surrounding the guidelines' creation, implementation and promulgation. From the letter,

> To specifically illustrate the concerns of Plaintiff, but without limiting the identification of the Defendants deficiencies, one need only look at the Responses to Request Number 3 wherein Wexford produced certain documents but answered that they were superseded by certain IDOC directives, which do not appear to have been produced. For its Response to Numbers 3 and 4, the IDOC claims to not have in its possession any of the Wexford material it is superseding. Most concerning would be the Defendants' Responses to Request 16, where Wexford and IDOC point the finger at each other for the promulgation of the standards upon which their respective defenses are premised. Responses to Request No. 22, 23, 25, 26, 27 and 28 further illustrate a failure to respond adequately given the availability of this information from prior litigation.

A copy of the February 11, 2022, Rule 37 Letter is attached hereto as Exhibit F.

18. This prompted Dr. Chan to supplement her production and for the first time identify Dr. Mahesh Patel, and Dr. Jeremy Young of UIC as collectively having participated in creating or updating the guidelines.

19. Dr. Chan and the IDOC defendants also provided letters in response to the Rule 37 Letter, but no additional documents were forthcoming. See Exhibit E. A Copy of IDOC's Letter is attached hereto as Exhibit G.

20. The week of February 28, 2022, in the spirit of Rule 37, the undersigned attorney called counsel for the IDOC defendants, Wexford Defendants and Dr. Chan, to understand any objections, confusion, or any other obstacles to getting a full and fair response to written discovery.

21. Plaintiff then followed-up in an email on March 3, 2022, setting forth all the clarifications the parties had discussed, some limitations for the discovery requested and even tried to suggest an ESI protocol to facilitate discovery searches for the Defendants' convenience. A copy of the March 3, 2022 email is attached hereto as Exhibit H.

22. This email was never responded to and no additional documents were forthcoming.

**<u>SPECIFIC DOCUMENT REQUESTS</u>**

23. Plaintiff would reserve the right to seek further answers and responses to all of the

discovery improperly answered, but for purposes of this motion will limit the requests for ease of the Court's ruling as well as discovery proceeding without further delay.

**A. Requests Pertaining to All Defendants**

24. Request Number 5 seeking a "complete copy of the IDOC guidelines for the diagnosis and treatment of inmates with Hepatitis C." We have narrowed this request to eliminate the request for diabetes guidelines. To date, only guidelines for 2019 and 2021 were received. Furthermore, it is Plaintiff's belief that each defendant has the guidelines and that some other defendant had a greater part in the development, use, or promulgation of the policy does not excuse any other defendant with a copy in its possession from producing it.

25. Request Number 17 seeking "all communication between Wexford, or any other defendant, and IDOC, or any outside medical providers, specialists or consultants in connection with policies, procedures, or protocols for the diagnosis and treatment of inmates with Hepatitis C." We anticipate this would cover any internal communication, communications between the parties, and communications between the parties and any third parties regarding treating inmates with Hepatitis C. Therefore, we would request each individual defendant perform an email search, and the institutional/corporate defendants perform a firm-wide search regarding the following ESI terms: (1) "Hep C," (2) "Hepatitis C," (3) "HCV" AND Wexford, inmate, i/m, IDOC, Chan, Paul, Young, Juliana, Jeremy, Mahesh, Pittman, Deweese, Ward, Schroyer, A1C, diabetes, sugars. Meaning individually searching each of first three terms using the connector "AND" with each of the terms that follow. We also request a search for any other noncommunication documents or files related to the guidelines.

26. Request Number 20 seeking "all documents evidencing or relating to policies or procedures for identifying medically ill IDOC inmates for referral or enrollment in chronic care

clinics, including but not limited to chronic care clinics for inmates with Hepatitis C or diabetes." We have narrowed this request to only Hep C care. This would include UIC policies involving inmates in the Hep C chronic clinic. We also elaborated that the request is for documents pertaining to the creation of the policy, the implementation, how they came to be who put them into place and how it was enforced. This would include any relevant document whether or not the defendant created, enforced, or implemented the policy or whether they came to possesses it second-hand.

27. Request Number 21 seeking all documents related to the development of treatment programs for IDOC inmates with Hep C, including but not limited to all national guidelines for disease/condition specific organizations or prison organizations consulted or followed in developing such programs. This request is narrowed to only cover Hep C treatment programs. This was clarified to state it includes the source materials for each year's guidelines and discussions and materials related to any revisions or review that were undertaken in formulating the guidelines or policies.

28. Request 23 requests how any new guidelines from recognized authorities were integrated into the protocols and which were used.

29. Request 27 goes also to the source material and other deciding documents for a particular requirement related to A1C.

30. Finally, Request 28 seeks documents evidencing the treatment of other similarly-situated inmates in IDOC custody who were refused Hep C treatment based on diabetes or elevated A1C. As discussed this request is limited in time from 2016-2022. And we anticipate the 18 PHI identifiers will be redacted for HIPAA compliance.

**B. Requests to IDOC and Wexford**

31. Request Number 24, 25 and 26 as they pertain to IDOC and Wexford should be responded to, as we were told in discovery that Wexford guidelines "are superseded by the IDOC administrative and institutional directives." Yet neither disclosed the basis for this policy.

**C. Requests to Wexford**

32. Request Number 16 for Wexford, requesting the internal policies, discussions, documents and other materials related to its investigation and handling of the Hep C guidelines.

## CONCLUSION

33. As of the date of this motion, Plaintiff has not received sufficient documents to proceed with depositions of the Defendants, as basic documents such as the medical basis for treatment decisions are being withheld.

34. Further, Dr. Chan has now offered up the identities of two new potential defendants or witnesses, but because Defendants have not disclosed the materials related to the role of those individuals, or anyone, in the creation, revision and/or promulgation of the guidelines, Plaintiff has been unable to determine whether grounds exist to amend the Complaint to name them as additional defendants.

35. Defendants should be ordered to provide all documents related to the Hep. C guidelines in their possession, as fully described in the attachments to this motion, so that the remaining discovery may proceed in this matter. Only then can Plaintiff proceed to deposing persons with knowledge of why defendants (and perhaps others) medically groundless guidelines were used to deprive him of necessary medical treatment.

36. Plaintiff has fully answered Defendants' written discovery and has been deposed. It is time for Defendants now to honor their discovery obligations in the same way.

WHEREFORE, Plaintiff, JIMMIE DALE MILLER moves this Court to order Defendants

to supplement their written discovery requests on or before April 4, 2022, specifically:

(a) That all defendants revise, and fully respond to Request 17; 20; 21; 23; 27; 28; and that

(b) Defendants Wexford and IDOC revise, and fully respond to Request 24; 25 and 25; and that:

(c) Defendant Wexford revise, and fully respond to Request 16.

Respectfully submitted,

JIMMIE DALE MILLER

By: /s/ Lisa M. Roccanova
Lisa M. Roccanova

Sean M. Sullivan
Lisa M. Roccanova
DALEY MOHAN GROBLE, P.C.
55 West Monroe Street
Suite 1600
Chicago, IL 60603
Phone: (312) 422-9999
Fax: (312) 422-537
ssullivan@daleymohan.com
lroccanova@daleymohan.com

**CERTIFICATE OF SERVICE**

I, Lisa M. Roccanova, an attorney, certify that I caused a true copy of the foregoing Plaintiff's Re-filed Motion to Compel Defendants to Supplement Written Discovery Answers to be served upon the attorneys of record via the Court's ECF filing system on November 11, 2022.

/s/Lisa M. Roccanova
Lisa M. Roccanova