**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JIMMIE DALE MILLER,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCE, INC.; LOUIS SHICKER, former Medical Director of Illinois Department of Corrections, individually; STEVE MEEKS, Medical Director of Illinois Department of Corrections, individually; MICHAEL DEMPSEY, former Interim Medical Director of Illinois Department of Corrections, individually; DR. DINA PAUL, individually; DR. LAURA PITTMAN, individually; DR. JULIANA CHAN, individually; LORI CUNNINGHAM, individually; and CORRECTION OFFICER DOE, individually,<br><br>Defendants. | ) | No. 3:20-cv-00446-NJR |

**PLAINTIFF'S RESPONSE TO IDOC DEFENDANTS'**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS**

Plaintiff Jimmie Dale Miller, by his attorneys, Sean M. Sullivan and Mohan Groble Scolaro, P.C., submits this response to the Motion to Enforce Settlement Agreement and for Sanctions (ECF 269) filed by the Office of the Illinois Attorney General ("OAG") on behalf of defendants Lorie Cunningham, Michael Dempsey, Rob Jeffreys, Steve Meeks, Louis Shicker and Thomas Welsh (the "IDOC Defendants"). The Court should deny the Motion because: (1) the OAG, on behalf of the IDOC Defendants, has conditioned settlement on inclusion of terms that were not discussed or agreed to by the parties during their negotiations; and (2) the OAG has not offered any basis or legal authority that would allow this Court to impose sanctions on anyone.

### *Existence of an Agreement*

1. After brief negotiations, beginning on December 19 and concluding on December 29, Plaintiff and the IDOC Defendants agreed to a settlement under which Plaintiff would receive a (modest) sum certain of money in exchange for dismissing and releasing the IDOC Defendants. As shown in the parties' email communications, the only terms the parties discussed or agreed on were: (1) receipt of the sum certain settlement amount by Plaintiff; (2) waiver by the IDOC Defendants of any "costs, fees or sanctions" to which they would otherwise be entitled; (3) dismissal of the IDOC Defendants from the lawsuit; and (4) that payment of the settlement amount could take six to eight weeks from the signing of an agreement because the payment would be processed through Central Management Services and the Comptroller. (*See* Ex. A to Motion, at 19-23).[1]

2. On February 6, 2024, the OAG submitted proposed settlement documents to Plaintiff which included terms stating that: (1) Plaintiff "shall receive [the sum certain settlement amount]" to which the parties had agreed; (2) the settlement amount would be payable from appropriations made to Central Management Services; (3) the IDOC Defendants would not be individually responsible for payment of any sum under the agreement; (4) payment of the settlement amount was subject to availability of funds; and (5) the settlement amount was subject to withholding amounts "that Plaintiff may owe to other persons or to state agencies." (*See* Exhibit 1 (redacting the settlement amount – at the OAG's request). The parties had never discussed or agreed to items (3), (4) or (5), and item (5) (stating amounts could be withheld from the sum certain

---

[1] In addition to redacting the settlement amount, the OAG redacted the agreement to waive "costs, fees or sanctions" from Exhibit A. Plaintiff presumes the OAG will not dispute that such waiver was a term of the putative settlement.

settlement amount) is inconsistent with item (1) (stating that "Plaintiff shall receive" the sum certain settlement amount).

3. On March 1, 2024, Plaintiff provided to the OAG a revised draft of a proposed settlement agreement. (*See* Exhibit 2 (in redline form). Plaintiff included terms stating that: (1) the IDOC Defendants would pay the settlement amount to Plaintiff; (2) Plaintiff would accept a check for the settlement amount from the State of Illinois and would not seek to recover the settlement amount directly from the IDOC Defendants; (3) in the event Plaintiff did not receive the full amount of the settlement amount the settlement would be void, the amount paid would be returned and the lawsuit would continue against the IDOC Defendants. (*Id*.).

4. On March 21, 2024, the OAG provided a revised draft settlement agreement to Plaintiff which was virtually identical to the OAG's original draft but included the statement that: "The Office of the Illinois Attorney General has contacted the State Comptroller's office and has been informed that as of February 28, 2024, Plaintiff has no outstanding debts subject to withholding." (*See* Exhibit 3). The OAG did not agree to the changes proposed by Plaintiff and Plaintiff did not agree to the revised draft proposed by the OAG. The OAG was not willing to make a definitive statement that no amounts would be withheld from the settlement check.

***The Parties Did Not Agree to the Terms OAG Seeks to Enforce***

5. OAG cites *IMI Norgren, Inc. v. D&D Tooling Mfg., Inc.*, 306 F. Supp. 2d 796 (N.D. Ill. 2004) as support for its request that the Court enforce a settlement between the parties that includes virtually all the matters in its draft agreement. But as the *IMI Norgren* court observed, "[c]lose only counts in horseshoes not settlement agreements. The parties in this case have come close to a settlement agreement, but did not reach one." *Id*. at 798. There, the parties did not agree on how a note given as part of the settlement would be secured and the court wrote "[t]he term

pertaining to security is too indefinite in this case. All that was agreed to was that the payment was to be secured in some fashion. No other terms were spelled out. . . . Simply stated, the parties did not agree how to secure" the note. *Id*. at 802.

6. Here the parties only agreed to the amount Plaintiff would receive; that Plaintiff would dismiss the complaint as to the IDOC defendants; that the IDOC Defendants would waive costs, fees or sanctions; and that payment would occur approximately six to eight weeks after signing a settlement document. The parties did not agree (or even discuss) setoffs that would reduce the amount paid to Plaintiff or that the IDOC Defendants would have no personal responsibility for the settlement.

7. The court addressed a similar issue in *Kangarlou v. Locklear*, No. 2:18-cv-02286, 2022 U.S. Dist. LEXIS 155078 (D. Nev. August 11, 2022), where the parties agreed to a settlement amount, but the defendant withheld part of the settlement proceeds until it received authorization from Medicare/Medicaid. The court found that "an enforceable settlement agreement does not exist. This is because the parties' e-mail exchanges reveal that they did not agree to the material terms of the settlement agreement, namely the terms regarding how any potential Medicare and Medicaid liens would be resolved as well as how and when the settlement proceeds would be disbursed. Put another way, the parties' conduct (through their e-mail exchanges) indicates there was no complete meeting of the minds." *Id*. at *3-4. The court wrote:

> As of January 6, 2022 – the date that Defendants argue an enforceable settlement agreement was formed – all that the parties had agreed to was Defendants paying Plaintiff $60,000 in exchange for (1) a notarized release that included a mutual confidentiality clause, and (2) a stipulation to dismiss the case with prejudice[.] . . . At this point, neither Plaintiff's offer nor Defendants' acceptance discussed or referenced any existing or potential liens."

*Id*. at *4-5.

8. The OAG argues that the State is required to pay the settlement on behalf of the IDOC Defendants under 5 ILCS 350/2(a), and that the Comptroller is required to take available setoffs from any funds it pays out under 15 ILCS 405/10.05. But 5 ILCS 350/2(a) is – by its express terms – permissive. That is, the State has an obligation to indemnify a state employee in certain cases *if* the employee gives notice and makes a demand for such indemnification to the OAG and *if* the employee grants the OAG sole discretion to settle the matter on his or her behalf. The indemnity right does not apply automatically and the parties never discussed the implications of the IDOC Defendants' potential indemnity rights against the State.

9. If OAG believed the settlement should be subject to a potential offset under 15 ILCS 405/10.05 because the State was paying the settlement under 5 ILCS 350/2(a), it was required to specifically identify that as a term when it agreed to Plaintiff's settlement demand. Only *then* could the OAG argue there had been a meeting of the minds on that material issue. *See Dillard v. Starcon Int'l., Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) ("Whether a meeting of the minds occurred depends on the parties' objective conduct, not their subjective beliefs."); *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) ("[I]n assessing [the parties'] intent, their [s]ecret hopes and wishes count for nothing because the status of a document as a contract depends on what the parties express to each other and to the world, not what they keep to themselves.") (internal quotation marks omitted); *Johnson v. United States*, No. 13-cv-02839, 2018 U.S. Dist. LEXIS 191709 *2 and n.1 (N.D. Ill. November 7, 2018) (enforcing settlement agreement because "[d]uring the settlement discussions, the Government indicated that it intends to withhold payment of the settlement proceeds and instead apply those proceeds toward Johnson's outstanding criminal restitution debts – a process called 'administrative offset' – pursuant to the Treasury Offset Program outlined in 31 U.S.C. § 3716.").

10. Under Illinois contract law, a binding agreement requires a meeting of the minds or mutual assent as to all material terms. There will be a meeting of the minds where there has been assent to the same things in the same sense on all essential terms and conditions. The party seeking to enforce a putative agreement has the burden of proving the existence of all the elements of a contract. *IMI Norgren*, 306 F. Supp. 2d at 802 and cited cases. If the OAG believes all the terms in its draft settlement agreement are material, then there was no meeting of the minds. If those terms were not material, then the Court can enforce a settlement in which: (1) Plaintiff receives the full settlement amount; (2) Plaintiff dismisses his complaint as to the IDOC Defendants; and (3) the IDOC Defendants waive all costs, fees and sanctions to which they might otherwise be entitled.

***OAG's Sanctions Request is Baseless***

11. The OAG offers no support for its one-sentence request for sanctions, including citing no rule or other authority under which the Court could even entertain sanctioning any of the parties based on the dispute in question. The mere fact that one party prevails on an argument does not mean that the opposing parties' argument is sanctionable. The Seventh Circuit has specifically cautioned against '[h]air-trigger motions for sanctions by lawyers who do not recognize [the] difference [between vigorous advocacy and frivolous conduct]." *Alliance to End Repression v. City of Chicago*, 899 F.2d 582, 583 (7th Cir. 1990).

12. For the above reasons, the Court should (1) deny the IDOC Defendants' Motion and vacate the order staying discovery and other litigation matters pertaining to the IDOC Defendants or (2) order the IDOC Defendants to comply with a settlement encompassing the three items listed in paragraph 10, above.

Respectfully submitted,

JIMMIE DALE MILLER

By: /s/ Sean M. Sullivan
Sean M. Sullivan

Sean M. Sullivan
MOHAN GROBLE SCOLARO, P.C.
55 West Monroe Street
Suite 1600
Chicago, IL 60603
Phone: (312) 422-9999
Fax: (312) 422-537
ssullivan@daleymohan.com

**CERTIFICATE OF SERVICE**

I, Sean M. Sullivan, an attorney, certify that I caused a true copy of the foregoing **Plaintiff's Response to the IDOC Defendants' Motion to Enforce Settlement and for Sanctions** to be served upon the attorneys of record via the Court's ECF filing system on April 25, 2024.

/s/ Sean M. Sullivan
Sean M. Sullivan