**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JIMMIE DALE MILLER,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCE, INC.; LOUIS SHICKER, former Medical Director of Illinois Department of Corrections, individually; STEVE MEEKS, Medical Director of Illinois Department of Corrections, individually; MICHAEL DEMPSEY, former Interim Medical Director of Illinois Department of Corrections, individually; DR. DINA PAUL, individually; DR. LYNN PITTMAN, individually; DR. JULIANA CHAN, individually; LORI CUNNINGHAM, individually; and THOMAS WELSH, individually,<br><br>Defendants. | ) | No. 3:20-cv-00446-NJR |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**<u>MOTION FOR SUMMARY JUDGMENT AGAINST DR. CHAN</u>**

Plaintiff Jimmie Dale Miller submits this reply in support of his motion for summary judgment against Dr. Chan.

**A. Dr. Chan Was Responsible for the A1c Exclusion**

To establish the subjective element of a § 1983 claim, the plaintiff must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Here, Dr. Chan worked with Dr. Patel on revisions to the IDOC HCV Guidelines in May and June 2017, during which Dr. Chan consulted the guidelines of the AASLD, IDSA, and FBOP. (Doc. 294, ¶ 81). Dr. Chan

forwarded proposed revisions to the Guidelines under which elevated A1c became an absolute exclusion without regard to the contemplated drug therapy. These proposed revisions removed elevated A1c from the list of contraindications, because interferon was no longer part of common HCV treatments, but instead made it a blanket exclusion. (Doc. 294, ¶¶ 82, 84). Dr. Chan argues that "Plaintiff has no evidence of who proposed or formulated the revisions to the 2017 guideline." (Doc. 301, at 16.) That is not true. Dr. Chan does not dispute that she sent the email to Dr. Patel and Dr. Young (with a copy to Dr. Meeks), attaching the draft of the 2017 guideline that tracked changes *including the addition of the A1c exclusion*. (*See* Doc. 301, at 16; Doc. 302, at 32). That is evidence, even if deemed circumstantial, that Dr. Chan proposed and/or formulated the addition of the A1c exclusion to the 2017 guideline. "The law makes no distinction between the weight to be given to either direct or circumstantial evidence." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024); *see* FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, 1.12 (2017 Rev.). Either type of evidence can prove a fact, and the type of evidence Plaintiff relies on to support his claim does not dictate whether a genuine issue of material fact exists for trial. *Id.*, at 945-46; *United States v. Godinez*, 7 F.4th 628, 639 (7th Cir. 2021) (collecting cases providing that circumstantial evidence is not weaker than direct evidence).

Dr. Chan argues that "the draft does not indicate who proposed or formulated the changes" and that "Chan's email says nothing about an A1c exclusion being added." (Doc. 301, at 16). But the proponent of an item of evidence is only required to produce evidence sufficient to support a finding that the item is what the proponent claims it is, Fed. R. Evid. 901(a), and "circumstantial evidence is of course sufficient to establish the authenticity of a document." *United States v. Clark*, 649 F.2d 534, 542 (7th Cir. 1981) (in the absence of direct evidence, an email's author or sender may be demonstrated by, among other things, the characteristics of the document itself). The

revised guideline document sent by Dr. Chan, including the tracked changes, speaks for itself and it includes the new A1c absolute exclusion.

Dr. Chan offers no evidence or suggestion of who, other than herself, made these revisions *and does not even directly deny that she made them*. Dr. Chan asks the Court to speculate that someone else *might* have made the revisions (before she sent them on to Dr. Patel and Dr. Young) and that she is therefore relieved of liability. But speculation cannot create a genuine issue of fact that defeats summary judgment. *Flowers*, 104 F.4th at 946; *Circle City Broad. I, LLC v. AT&T Servs., Inc.*, 99 F.4th 378, 384 (7th Cir. 2024). Moreover, Dr. Chan offers no support for the argument that accepting changes proposed by some mystery contributor or having Dr. Patel or Dr. Young "approve" her proposed A1c exclusion immunizes her from § 1983 liability. The only evidence in the record establishes that Dr. Chan was responsible, whether solely or in concert with others, for the inclusion of the baseless A1c exclusion that deprived Plaintiff of HCV treatment.

**B. There is No Evidence that Dr. Chan Based the A1c Exclusion on Medical Judgment**

Dr. Chan paints the A1c exclusion as a "disagreement with the course of an inmate's medical treatment" but points to no evidence that the exclusion was based on any medical judgment. First, she ignores the undisputed fact that the exclusion conflicts with the guidelines propounded by FBOP, AASLD, UIC and Wexford. Second, she ignores the fact that diabetes is a known co-morbidity associated with more rapid progression of fibrosis and that it is an indicator for priority HCV treatment. Third, she disregards the established law that inmate medical decisions must be fact-based with respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm and the efficacy of available treatments. *Roe*, 631 F.3d at 859. Dr. Chan knew that the presence of other diseases may affect the rate of progression of fibrosis. (Doc. 294, ¶ 48). She knew that cirrhotic patients who achieve sustained virological

response are not free of liver complications. (Doc. 294, ¶ 55). Dr. Chan knew that Fibrosis Scores of F3 and F4 are indicia of advancing liver disease. (Doc. 294, ¶ 161). The blanket arbitrary A1c exclusion is not an exercise of medical judgment concerning Plaintiff's treatment, and Dr. Chan offers no evidence that it is.

Dr. Chan's reliance on Dr. Patel's speculative testimony about potential complications *if* diabetes causes an interruption in HCV treatment is misplaced. There is no evidence that Dr. Chan assessed the likelihood that Plaintiff's A1c would cause such an interruption; she never claimed that was the reason for denying him treatment; and there is no evidence that his A1c would have interrupted his treatment. Indeed, Dr. Chan testified that if he was referred in January or February 2020 (when his A1c was still outside Dr. Chan's 7.5% maximum) he would have been treated. The absolute exclusion at issue in this case was not a medical judgment concerning Plaintiff's individualized condition and medical needs.

Plaintiff addressed Dr. Chan's argument concerning evidence of harm caused by delay in treatment in his response to Dr. Chan's motion for summary judgment (Doc. 302, at 37-38), incorporated herein by reference.

## CONCLUSION

For the reasons set forth herein, and in Plaintiff's motion for summary judgment (Docs. 293, 294), the Court should enter summary judgment in favor of Plaintiff and against Dr. Chan.

Respectfully submitted,

JIMMIE DALE MILLER

By: /s/ Sean M. Sullivan
Sean M. Sullivan

Sean M. Sullivan
MOHAN GROBLE SCOLARO, P.C.
55 West Monroe Street, Suite 1600
Chicago, IL 60603
Phone: (312) 422-9999
ssullivan@daleymohan.com

**CERTIFICATE OF SERVICE**

I, Sean M. Sullivan, an attorney, certify that I caused a true copy of the foregoing **Plaintiff's Reply in Support of Motion for Summary Judgment Against Defendant Dr. Juliana Chan** to be served upon the attorneys of record via the Court's ECF filing system on November 7, 2024.

/s/ Sean M. Sullivan
Sean M. Sullivan