**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JIMMIE DALE MILLER, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 3:20-cv-00446-NJR |
| WEXFORD HEALTH SOURCE, INC., et al. | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AGAINST WEXFORD AND DR. DINA PAUL**

Preliminarily, Plaintiff's LR 56.1 statement complies with the terms of the rule, which requires that "each relevant, material fact [be set forth] in a separately numbered paragraph." The rule does not require that facts be set forth in separate numbered sentences, and it provides for the opposing party to admit and dispute parts of the paragraph as appropriate. Each paragraph in Plaintiff's statement is a core fact which Defendants have admitted or disputed as they deemed proper.

**A. Wexford and Dr. Paul's § 1983 Liability is not Dictated by the IDOC Contract**

Defendants argue that Wexford and its employees have no responsibility to Plaintiff except through the duties Wexford contractually assumed on behalf of the State of Illinois. This is factually and legally false. Wexford and its employees have a responsibility to Plaintiff to not act with deliberate indifference as to his medical condition. When a person accepts employment with a private entity that contracts with the state, he understands that he is accepting the responsibility to perform his duties in conformity with the Constitution. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827 (7th Cir. 2009). Because Wexford is considered a state actor for purposes of §

1983, *Arita v. Wexford Health Sources, Inc.,* 2016 U.S. Dist. LEXIS 150106 at *2 (N.D. Ill. Oct. 31, 2016), they may be liable if they "maintain a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners." *Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010). As the court expressly said in *Baston v. Indiana State of*, No. 3:18-CV-791-JD-MGG, 2021 U.S. Dist. LEXIS 32876 (N.D. Ind. Feb. 23, 2021) (one of the cases cited by Defendants (Doc. 299, at 17)), "Wexford, however, could be liable based on a custom of blindly following HCSD 3.09 without consideration of an inmate's individual circumstances" citing *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011) ("With respect to an individual case, however, prison officials still must make a determination that application of the protocols result in adequate medical care.").

Following the absolute exclusion policy with the knowledge that the policy contradicts community medical standards, and thereby denying HCV treatment on the basis of an arbitrary and non-medical reason, is maintaining a condition that infringes upon Plaintiff's constitutional rights. Defendants cite *Jones v. Strow,* No. 19-cv-4013-MMM, 2019 U.S. Dist. LEXIS 186990, at *7 (C.D. Ill. Oct. 29, 2019), as support for the proposition that Wexford cannot be found liable for failing to provide services that IDOC has not engaged Wexford to provide. However, the *Jones* case is starkly different from the instant matter. The plaintiff in *Jones* was seeking dental care. There was no established dental program at the correctional facility, nor did plaintiff identify a policy that "thwarted his referral to a periodontist." *Id.* at 7. In fact, the plaintiff was allowed to proceed against the Wexford doctor in his claim for deliberate indifference. *Id.* at 8. Here, there are policies regarding the treatment of HCV, and Wexford was contracted to carry out these policies. The 2019 IDOC HCV Guidelines provide that "the primary care physicians at the IDOC sites are responsible for *appropriate screening* and initial workup for all hepatitis C-positive

patients *to determine eligibility of treatment*." (emphasis added) (Doc. 294, ¶ 97). Under Wexford's contract with IDOC, and under the January 2019 Guidelines, it was the responsibility of Wexford clinicians to determine whether a patient is eligible for HCV treatment, and Wexford contractually agreed to follow the unconstitutional IDOC Guidelines in making that determination. (Doc. 294, ¶ 98). The Wexford site medical director decides what constitutes adequate healthcare services under the Illinois/Wexford contract. (Doc. 294, ¶ 35).

It is not simply the IDOC Guidelines that render the Defendants liable under § 1983, it is Wexford's own policy – developed by Dr. Paul and the rest of the Medical Advisory Committee – requiring its medical employees to follow the Guidelines that were known to be medically baseless. It is that corporate policy that thwarted Plaintiff's referral to UIC's HCV clinic. Just because Wexford was not contractually assigned to provide HCV treatment does not mean that they can avoid liability by contractually agreeing to provide constitutionally deficient care. The application of medical care under the contract must still amount to adequate medical care. *Roe*, 631 F.3d at 860. Dr. Paul acknowledged that her "job" is to "follow the national guidelines of medical care" and to "provide medical care to the best of [her] ability with the most updated national guidelines." (Doc. 294, ¶¶ 27-29). Defendants' assertion that Dr. Paul has no obligation to Plaintiff concerning HCV treatment is thus a gross misstatement of her own testimony and a complete misstatement of the law.

A prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Dr. Paul's deliberate indifference encompassed when she informed Plaintiff that, "had his A1c improved, he could be referred for treatment." She thereby chose to ignore Plaintiff's condition and continue with ineffective medical care. Dr. Paul knew the elevated A1c exclusion was baseless,

and that in fact diabetes is a co-morbidity indicating that HCV treatment should be provided earlier rather than later. (Doc. 294, ¶¶ 101-103). Again, Defendants cite to a case that has contrasting facts that make their point irrelevant. *Morissette v. Wexford Health Sources, Inc.,* No. 19 C 4945, 2023 U.S. Dist. LEXIS 26798, at *8 (N.D. Ill. Feb. 17, 2023). The statement Defendants quote regarding the Wexford doctor's ability to ignore or bypass the IDOC guidelines is based on a completely different fact pattern. Plaintiff in that case needed a hip replacement surgery while also having HCV. Per the IDOC guidelines, his HCV was not severe enough for treatment, but per his surgeon, it was too severe to allow hip surgery due to concerns of post-operative complications. There was no challenge to the substance of the HCV guidelines, only the complaint that the guidelines should have been waived to allow the hip surgery. A prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards. *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). That is not what occurred here.

**B. <u>Elevated A1c is not a Valid Exclusion for HCV Treatment</u>**

Refusing treatment for the complained of condition, as in *Pinkston v. Madry,* 440 F.3d 879, 892 (7th Cir. 2006) (who refused x-rays after complaints of jaw swelling), is completely different than refusing or not complying with treatment for a *separate* issue being wrongly used as a disqualifier for treatment of the complained of disease. Treatment for elevated A1c is not necessary by community and national standards in order to receive HCV treatment, and there is no reason to wait. Dr. Paul testified herself that both elevated A1c and HCV can be treated at the same time (Doc. 294, ¶ 117). The fact that Plaintiff was "buying sweets from the commissary and refusing his insulin injections" would only be relevant if Plaintiff is claiming deliberate indifference to his

*diabetes*. The "cynical interpretation" by Defendants accusing Plaintiff of refusing insulin to bolster his HCV claims is disingenuous and factually unsupported. It is not the patient who is medically educated, it is the physician. It is the responsibility of the physician to treat the patient's medical concerns without withholding treatment due to baseless and arbitrary exclusions. To assume that Plaintiff would be uncooperative at HCV treatment because he may not be consistent in diabetes treatment is not something Dr. Paul even contemplated. She elected to follow the absolute exclusion policy instead of community and national standards, Wexford's global medical policies or her own knowledge and judgment. Deliberate indifference can be shown when "the decision by the [medical] professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Dr. Paul did not base the decision not to refer Plaintiff for HCV treatment on her professional judgment. She rigidly followed the arbitrary and medically baseless IDOC Guidelines to protect Wexford's contractual relationship with IDOC.

Respectfully submitted,

JIMMIE DALE MILLER

By: /s/ Sean M. Sullivan
Sean M. Sullivan

Sean M. Sullivan
MOHAN GROBLE SCOLARO, P.C.
55 West Monroe Street, Suite 1600
Chicago, IL 60603
Phone: (312) 422-9999
ssullivan@daleymohan.com

**CERTIFICATE OF SERVICE**

I, Sean M. Sullivan, an attorney, certify that I caused a true copy of the foregoing **Plaintiff's Reply in Support of Motion for Summary Judgment Against Defendants Wexford and Dr. Dina Paul** to be served upon the attorneys of record via the Court's ECF filing system on November 7, 2024.

/s/ Sean M. Sullivan
Sean M. Sullivan