5442-339

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JIMMIE DALE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 20-cv-00446-NJR |
| | ) | |
| | ) | |
| DINA PAUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JULIANA CHAN'S REPLY**
**IN SUPPORT OF MOTION FOR SUMMARY JUGMENT**

NOW COMES Defendant, JULIANA CHAN, by and through her attorney, Keith B. Hill of HEYL, ROYSTER, VOELKER & ALLEN, P.C., and submits her Reply in Support of Motion for Summary Judgment.

Plaintiff is entitled to his opinion that he should have been referred to UIC despite having uncontrolled diabetes, but he is not entitled to his own facts. There is no evidence that Chan created the A1c absolute exclusion. Chan testified that when UIC became involved in June 2010, Dr. Shicker, IDOC's medical director, "presented" the guidelines to Dr. Cutler (a then-UIC doctor). (Doc. 295-12 at 122-23). She first became aware of the guidelines when Dr. Walzer (a then-UIC doctor) showed her the guidelines, and told her that they were going to follow them. (*Id*. at 124). Chan testified that primarily the IDOC guidelines were updated when the IDOC medical director contacted UIC. (*Id*. at 63). The IDOC medical director provided the topics or purpose of the revisions that needed to be looked at. (*Id*. at 66). Chan – a pharmacist - testified that her personal involvement in the guidelines was limited to updating the guidelines when new medications were approved. (*Id*. at 58-59, 62-63, 100-101, 108). She testified that who to treat in

the clinic was outside her purview. (*Id*. at 59). IDOC did not discuss with her who to treat or who would be eligible to treat in the clinic. (*Id*. at 59).

Plaintiff relies on a June 22, 2017 email from Chan to Dr. Young and Dr. Patel (doctors then-at-UIC who are board-certified in Infectious Diseases) (Doc. 296-10 at 2), and an attached draft of the 2017 guideline with tracked changes (Doc. 296-10 at 4-19). But neither Chan's email nor the draft indicates who proposed or formulated the changes in the draft, including the A1c exclusion. (Doc. 296-10 at 2-19). Significantly, in her email, Chan asks Dr. Young and Dr. Patel to "review, comment, and edit" the draft guideline. (*Id*. at 2) And she tells them that once they approve the guideline then she will finalize the changes. (*Id*.)

Plaintiff argues that Chan created the checklist, but the checklist only summarized the guideline to make it easier for the providers. Chan's creation of the checklist is meaningless without evidence that she proposed or formulated or approved the guideline's A1c exclusion.

Plaintiff conflates the "contraindications" (as that term is used in pharmacology) of antiviral drugs used to treat hepatitis C with the medical judgment of whether a patient with uncontrolled diabetes should begin treating for hepatitis C. Simply because elevated A1c may not be pharmacologically contraindicated for antiviral drugs does not mean that a patient with uncontrolled diabetes should be started on a hepatitis C treatment regimen before her diabetes is controlled. Dr. Patel - an Infectious Disease doctor and non-party witness - explained that there are medical issues that should be a priority over the treatment of hepatitis C, including significantly uncontrolled diabetes. Specifically, he testified, "the morbidity from uncontrolled diabetes is more important to address in the short-term than chronic hepatitis C, given that chronic hepatitis C is an illness that takes about 20 years to manifest, if it does at all." (Doc. 299-15 at 8, Patel Dep. at 30-31). According to Dr. Patel, it is important to ensure there are no

interruptions in a patients' hepatitis C treatment and potential complications with uncontrolled diabetes could result in patients having to miss doses of treatment, which would be problematic. (*Id*. at 8-9, *Id*. at 32-33). Dr. Shicker agreed that hepatitis C treatment requires a high degree of compliance with treatment (*Id*. at 14-15, *Id*. at 56-58). He testified that people who have uncontrolled diabetes are often noncompliant with their diabetes treatment, causing concern for their ability or willingness to maintain strict compliance necessary for hepatitis C treatment. (*Id*. at 14-15, *Id*. at 56-58).

To the extent Plaintiff has any "evidence" in opposition to Dr. Patel's and Dr. Shicker's testimony, it shows disagreement among physicians at best. *Reck v. Wexford*, 27 F.4th 473, 484 (7th Cir. 2022) (disagreement is insufficient). This is especially true for Chan, who is a pharmacist and not an Infectious Disease doctor like Dr. Patel.

Plaintiff fails to address a fatal flaw in his claim against Chan – on February 12, 2020, Chan told an IDOC nurse to "send the needed documents to get [Plaintiff] evaluated." (Doc. 292 ¶¶ SMF 103-107). Per the guideline, IDOC was required to send specific documents to UIC as the final step to get a patient referred to UIC. (Exh. 1 to Doc. 292). The gravamen of Plaintiff's claim against Chan is that her enforcement of the A1c exclusion denied him treatment for his hepatitis C while he was in prison. Yet, we know for a fact that is not true as of February 12, 2020 because Chan told IDOC to refer him.

Plaintiff misunderstands Chan's argument related to his work-up never being completed before his release from prison. Chan argument is not that Plaintiff was denied treatment because of reasons outside of her control. It is that because Plaintiff's work-up was never completed before his release, Plaintiff has no evidence that had he been referred to the UIC (despite the A1c exclusion), he would have been treated. For example, Plaintiff admits that per the guideline, the

initial work-up included vaccination against hepatitis B. If HBV immunity was not detected then candidates were to be vaccinated. The guideline stated that IDOC doctors had to confirm that candidates did not have HBV or were immune because there were documented cases of HBV reactivation which led to death after initiating hepatitis C therapy. (Doc. 292 SMF ¶¶ 18 -21). Plaintiff also admits that he did not show the requisite immunity to the HBV virus until March 20, 2020. (*Id*. SMF ¶¶ 110, 114). A patient needs at least three months to complete the treatment. (*Id*. SMF ¶ 124). Plaintiff was released in June 2020. (*Id*. SMF ¶ 133). Without evidence that he actually would have been treated (as opposed to just being evaluated) had he been referred to the clinic, Plaintiff has no damages.

Chan's testimony that Plaintiff "would get treatment if he was referred" in February 2020 is an imprecise answer to a leading question that she did not intend to be taken literally as "treatment" verses being "evaluated" by the clinic. (Exh. 3 to Doc. 292, Chan Dep. at 229). IDOC never sent the needed documents to get Plaintiff referred so Chan does not know whether IDOC completed Plaintiff's work-up, including whether he was vaccinated against HBV.

Plaintiff was *not* denied treatment because of the A1c absolute exclusion. His referral to UIC for *evaluation* for treatment was *delayed* by IDOC from December 2019 to February 2020 because his A1c was elevated. In February 2020, after Plaintiff's A1c improved[1], IDOC referred Plaintiff to UIC, and Chan told IDOC to send the needed documents to get Plaintiff *evaluated* by UIC. From February 2020 to May 2020, the reason Plaintiff was not *evaluated* by UIC was *not* the A1c absolute exclusion. It was IDOC's delay in sending the needed documents to UIC, and not following-up with UIC until May 28, 2020. By that time, Plaintiff's A1c was again elevated

[1] An A1c test measures the average amount of sugar in blood over the past three months. https://my.clevelandclinic.org/health/diagnostics/9731-a1c

and Plaintiff's length of stay in prison (1 month) was insufficient to be treated. As argued in her supporting brief, Chan was not deliberately indifferent because she told IDOC to send the needed documents to get Plaintiff evaluated by UIC, and it was IDOC's responsibility to refer patients to UIC. Even if Chan had the requisite involvement and culpability, Plaintiff cannot prevail on a claim he should have been evaluated by UIC in December 2019 or February 2020 or May 2020 because he has no evidence that he would have been treated (incomplete initial work-up/length of stay) or that any delay in treatment had any detrimental impact on his condition.

Plaintiff fails to distinguish *Thomas v. Martija*, *Whitehead v. Mahone*, and *Crothers v. Zunker*, In those cases, the plaintiffs – like Plaintiff here - were "denied" treatment for their hepatitis, i.e., they were not treated, yet the court still required the plaintiffs to have verifying medical evidence that their doctor's election not to treat their hepatitis had a detrimental impact on their condition. *Thomas v. Martija*, 2020 WL 3192856, *3 (N.D. Ill. 2020) ("But even assuming Plaintiff should have received some treatment earlier, he does not offer evidence of any harm as a result of the delay."); *Whitehead*, 2011 WL 3241352, *7 (C.D. Ill. 2011) ("if the Plaintiff were to allege delay, he would need to demonstrate that the delay had a detrimental impact on his condition."): *Crouthers*, 2008 WL 5146682, *5 (W.D.Wis. 2008) ("plaintiff has presented no evidence to suggest that the department's policy of delaying treatment for his hepatitis C has led to further damage to his level or has decreased his chances of receiving effective treatment if and when tests show that he needs it.").

Chan should be granted summary judgment because she was not deliberately indifferent. Chan told IDOC to refer Plaintiff to UIC in February 2020 but IDOC never referred him. And Plaintiff has no evidence that he would have been treated (incomplete initial work-up/length of stay) or that any delay in treatment had any detrimental impact on his condition.

5442-339

JULIANA CHAN, Defendant,

BY: /s/ Keith B. Hill
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Keith B. Hill, ARDC #6277660

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
Suite 100, Mark Twain Plaza III
105 West Vandalia
Edwardsville, Illinois 62025
Telephone 618.656.4646
Facsimile 309.420.0402
edwecf@heylroyster.com
khill@heylroyster.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this **7th** day of **November, 2024**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Keith Hill
HEYL, ROYSTER, VOELKER & ALLEN, P.C.