047272/21061/JNR/JCS

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

JIMMIE DALE MILLER,

Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC., DIRECTOR CENTRAL MANAGEMENT SERVICES, LAURA PITTMAN, DINA PAUL, LORIE CUNNINGHAM, MR. WELLS, JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, JANE DOE #5, NURSE FUSON, NURSE SWINSON, NURSE FOSTER, C/O WILSON, ROB JEFFRIES, STEVE MEEKS, DR. JULIANA CHAN, AND UNIVERSITY OF ILLINOIS CHICAGO,

Defendants.

No. 20-cv-446

Nancy J. Rosenstengel

## REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, DR. DINA PAUL, and WEXFORD HEALTH SOURCES, INC., by and through their attorneys, CASSIDAY SCHADE LLP, and hereby submit their Reply to Plaintiff's Response to Motion for Summary Judgment, stating as follows:

## ADDITIONAL MATERIAL FACTS

To the extent Plaintiff incorporates or references facts taken from his Motion for Summary Judgment, Defendants incorporate herein their responses thereto. See Doc. 304.

## ARGUMENT

### A. Liability does not attach to Wexford outside the bounds of its IDOC Contract.

Plaintiff argues Wexford's contractual agreement with IDOC, requiring application of the IDOC Hepatitis C Guidelines, does not preclude liability for a claim of failure to provide treatment for Plaintiff's hepatitis C. As discussed in Defendants' Response to Plaintiff's Motion

for Summary Judgment [Doc. 304], this fundamentally misrepresents the law. Plaintiff's argument fails because it is not merely a matter of Wexford and its employees being contractually obligated to follow the IDOC Hepatitis C Guidelines, but that provision of treatment for Hepatitis C is expressly excluded from Wexford's Contract. [Defendants' Undisputed Material Facts (UMF), Doc. 299, ¶21-30]. As is clear from the face of the Contract, Hepatitis C treatment of IDOC inmates is provided not by Wexford, but by the University of Illinois Chicago (UIC). *Id.*

Liability can only attach to Wexford or its employees under 42 U.S.C. §1983 to the extent they are considered an extension of the State of Illinois because of their relationship with IDOC and are thereby "state actors." *West v. Atkins,* 487 U.S. 42, 56 (1988); *L.P. v. Marian Catholic High School*, 852 F.3d 690, 696 (7th Cir. 2017); *Shields v. Illinois Department of Corrections,* 746 F.3d 782, 797 (7th Cir. 2014) *See also* discussion in Defendants' Response to Plaintiff's Motion for Summary Judgment at Doc. 304.

The Seventh Circuit has recognized "[a] business like Wexford that contracts to provide medical care to prisoners undertakes 'freely, and for consideration, responsibility for a specific portion of the state's overall [constitutional] obligation to provide medical care for incarcerated persons, and thus acts under color of state law for purposes of § 1983. *Shields v. Illinois Department of Corrections,* 746 F.3d 782, 797 (7th Cir. 2014) (internal citations omitted) (emphasis added). Private entities, such as Wexford, are state actors only to the extent of those duties voluntarily assumed by them under that contract. *West*, 487 U.S. at 56.

Plaintiff argues Wexford and its employes can be liable for blindly following the IDOC Hepatitis C Guidelines without consideration of Plaintiff's individual needs. [Doc. 303, p. 18-20]. That argument, however, wholly ignores that provision of Hepatitis C treatment is outside

the scope of Wexford's Contract. While the State has delegated the provision of primary care services in IDOC to Wexford, treatment of Hepatitis C is excluded from that delegation and instead delegated to UIC pursuant to a separate agreement. [UMF [Doc. 299], ¶22-28]; [See Doc. 299, Ex. P, p. 38-40]. Wexford did not take on the State's obligation as to treatment of Hepatitis C and cannot be liable if the State otherwise failed to provide it. See *Jones v. Strow,* No. 19-cv-4013-MMM, 2019 U.S. Dist. LEXIS 186990, at *7 (C.D. Ill. Oct. 29, 2019) ("If IDOC has not engaged Wexford to provide these services, Wexford can hardly be found liable for the failing to provide them.")

Plaintiff relies heavily on *Baston v. Indiana State of,* No. 3:18-CV-791-JD-MGG, 2021 U.S. Dist. LEXIS 32876, (N.D. Ind. Feb. 23, 2021) and the cases collected therein. Notably, the cases collected include those in which summary judgment was entered in favor of Wexford under a similar analysis, finding *Monell* liability cannot attach where the policy at issue was not devised by Wexford, but Wexford was contractually obligated to follow it. *Id* at *10-11, *citing Hatfield v. Hobson*, No. 2:18-cv-464-JMS-MJD, slip op. at 15, (S.D. Ind. Sept. 22, 2020) (granting summary judgment for Corizon and Wexford on inmate's Hepatitis C policy and practice claim because they "were bound by the constraints of IDOC policy" and inmate's care fell within the policy's guidelines); *and Davis v. Wetzel*, No. 1:18-cv-804, 2020 U.S. Dist. LEXIS 117350, 2020 WL 3642382, at *7-8 (M.D. Pa. July 6, 2020) (granting summary judgment on *Monell* claim for prison's Infectious Care Nurse and former Corrections Health Care Administrator because it was undisputed that the DOC established the Hepatitis C policy, the Hepatitis C Treatment Committee decided which inmates received DAA treatment, and neither the nurse nor the administrator were involved in establishing the policy or participating on the committee).

Further, *Baston* relates to Wexford's contract with the Indiana Department of Corrections, where Wexford's contract included providing the actual Hepatitis C treatment. *See Stafford v. Carter,* No. 1:17-cv-00289-JMS-MJD, 2018 U.S. Dist. LEXIS 155866, at *29 (S.D. Ind. Sep. 13, 2018). The Court in *Baston* discussed the actual treatment decisions, not at issue here, and ultimately found no evidence of Wexford ignoring individual circumstances and granted summary judgment in Wexford's favor. *Baston*, 2021 U.S. Dist. LEXIS 32876, at *12. The *Baston* Court's discussion of the possibility that Wexford *could* be liable *if* there was evidence it had a custom of blindly applying the Indiana guideline in making treatment decisions has no applicability in Illinois, where another medical entity is contracted to provide the Hepatitis C treatment.

Plaintiff points to no cases where Wexford could be liable for not providing services it did not contract to provide. No basis exists for a *Monell* theory of liability in which a contractual vendor implicitly accepts a constitutional duty to provide a type of service it did not contract to provide and that its client delegated to another entity. A finding otherwise would make the voluntary undertaking of services as a vendor to the State an unknowable business venture, as failing to provide un-contracted-for services could result in civil liability and punitive damages. Wexford is entitled to summary judgment.

**B. Dr. Paul was not deliberately indifferent to Plaintiff's condition**

Dr. Paul is a physician employed by Wexford. (UMF, Doc. 299, ¶10). As a threshold matter, Dr. Paul's obligations to Plaintiff flow only through Wexford's State of Illinois Contract. She has no obligations to Plaintiff beyond those voluntarily assumed by Wexford. As such, pursuant to the express terms of the Contract, Dr. Paul had no authority to provide treatment for

Hepatitis C and was obligated by Contract to apply IDOC Hepatitis C Guidelines. *See discussion Supra*.

Moreover, nothing about Dr. Paul's handling of Plaintiff's care displayed indifference to any risk of harm. Plaintiff works very hard to try to paint a picture of Dr. Paul as someone who, despite extensive knowledge of Hepatitis C, chose to ignore Plaintiff's condition. The facts show the opposite. Despite Plaintiff's elevated A1C, which would exclude him from treatment at UIC under IDOC's Hepatitis C Guidelines, Dr. Paul ordered the FibroScan ultrasound to identify any scarring of his liver, continued to monitor labs for liver function and changes in his A1C, and ordered a liver and spleen ultrasound. [AMF, [Doc. 299], ¶52-67]. Dr. Paul ensured Plaintiff had the necessary tests required by UIC for evaluation for treatment so that, had his A1C improved, he could be referred for treatment. Nothing about Dr. Paul's handing of Plaintiff's care was anything close to approaching "a total unconcern for [Plaintiff's] welfare" necessary for a finding of deliberate indifference. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.1992).

Absent from Plaintiff's argument is what action Dr. Paul should have taken. Plaintiff does not seem to say Dr. Paul could have simply referred Plaintiff to UIC. Dr. Paul had nurses reach out to UIC twice, asking if he could be referred, while continuing to order the necessary testing. [UMF, [Doc. 299], ¶69, 73]. The responses said to get his A1C normalized or below 8. [UMF, [Doc. 299], ¶70, 75]. At no time while Plaintiff was at Lawrence was his A1C in the 8s. [UMF [Doc. 299], ¶77-78]. There is no reason to believe Plaintiff would have been treated had Dr. Paul completed the official referral. Nor did Dr. Paul have authority under Wexford's IDOC Contract to prescribe the Hepatitis C treatment herself. [UMF [Doc. 299], ¶25-28]. As the Northern District recently noted in response to a similar allegation against another Wexford

provider, "there is no evidence that would permit a finding that [the Wexford provider] had the ability to ignore or bypass IDOC's guidelines and order hepatitis C antiviral treatment outside of the guidelines' parameters." *Morissette v. Wexford Health Sources, Inc.,* No. 19 C 4945, 2023 U.S. Dist. LEXIS 26798, at *8 (N.D. Ill. Feb. 17, 2023). No jury could find Dr. Paul was deliberately indifferent to Plaintiff's medical needs and she is entitled to judgment in her favor.

**C. Plaintiff cannot show harm from alleged delay in treatment.**

Plaintiff argues he does not have to have evidence that his condition worsened during his time at Lawrence. However, an inmate claiming a delay in treatment must offer "verifying medical evidence" that the delay (rather than the inmate's underlying condition) caused some degree of harm. *Williams v. Liefer*, 491 F.3d 710, 714-715, (7th Cir. 2007); *Langston v. Peters*, 100 F.3d 1235-1240 (7th Cir. 1996). Plaintiff has no such evidence. To the contrary, Plaintiff's own facts allege he has been treated and he has no evidence that he suffered any worse outcome than if he had been treated at Lawrence. As such, Plaintiff's claim fails.

**CONCLUSION**

Plaintiff seeks to impose liability on Wexford and its providers for failing to provide treatment expressly excluded under Wexford's IDOC contract. Such argument has no basis any law – contractual or constitutional. Plaintiff cannot establish deliberate indifference as to either Wexford or Dr. Paul and Defendants are entitled to judgment as a matter of law.

WHEREFORE, for the above reasons, Defendants, DR. DINA PAUL, and WEXFORD HEALTH SOURCES, INC., respectfully requests this Honorable Court grant their Motion for Summary Judgment and grant such further relief as deemed appropriate.

Respectfully Submitted,

CASSIDAY SCHADE LLP

By: /s/ Joy C. Syrcle
One of the Attorneys for Defendants, DR. DINA PAUL, and WEXFORD HEALTH SOURCES, INC.

Joy C. Syrcle
6302066
CASSIDAY SCHADE LLP
2040 West Iles Avenue, Suite B
Springfield, IL 62704
(217) 572-1714
(217) 572-1613 (Fax)
jsyrcle@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Keith B. Hill
Ryan Kemper
Heyl, Royster, Voelker & Allen, PC
105 West Vandalia
Suite 100
P.O. Box 467
Edwardsville, IL 62025
(618) 656-4646
(618) 656-7940 (Fax)
khill@heylroyster.com

Tara M. Barnett
Christine G. McClimans
Assistant Attorney General
201 West Pointe Dr. Suite 7
Swansea IL 62226
tara.barnett@ilag.gov

Sean M. Sullivan
Ah Hil Kim
Daley Mohan & Groble
55 W Monroe Suite 1600
Chicago IL 60603
(312) 422-5536
ssullivan@daleymohan.com

/s/ Joy C. Syrcle

13033158